# EXHIBIT 2



**U.S. Department of Justice**

Office of the Inspector General

---

June 12, 2017

Zoe Tillman
zoe.tillman@buzzfeed.com

Subject:     Freedom of Information/Privacy Act Request [17-OIG-208]

Dear Mr. Tillman:

This responds to your Freedom of Information Act request to the Office of the Inspector General (OIG).  Specifically, your request seeks records of the OIG report entitled "Investigative Summary:  Finding of Misconduct by a Former United States Attorney for Having an Inappropriate Relationship With a Subordinate."  The report responsive to your request has been reviewed.  It has been determined that certain portions of such report be excised pursuant to the Freedom of Information Act, 5 U.S.C. §552(b)(6) and (7)(C).  Consequently, please find enclosed that information which can be released pursuant to your request.

If you are not satisfied with my response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, DC 20530-0001, or you may submit an appeal through OIP's FOIAonline portal by creating an account on the following web site:  https://foiaonline.regulations.gov/foia/action/public/home.  Your appeal must be postmarked or electronically transmitted within 90 days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA. See 5 U.S.C. 552(c) (2006 & Supp. IV 2010).  This response is limited to those records that are subject to the requirements of the FOIA.  This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

You may contact our FOIA Public Liaison, Deborah Waller at (202) 616-0646 for any further assistance of your request.  Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer.  The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601

Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at
ogis@nara.gov; telephone at (202) 741-5770; toll free at 1-877-684-6448.

Sincerely,

Jeanetta M. Howard
Government Information Specialist
Office of the General Counsel

Enclosure

2

U.S. Department of Justice
Office of the Inspector General

# REPORT OF INVESTIGATION

| SUBJECTS | | CASE NUMBER |
|---|---|---|
| ▮▮▮▮▮▮ ▮▮▮▮▮▮ <br> United States Attorney (former) <br> ▮▮▮▮▮▮ | | ▮▮▮▮▮▮ |

| OFFICE CONDUCTING INVESTIGATION | DOJ COMPONENT |
|---|---|
| Chicago Field Office | Executive Office for U.S. Attorneys |

| DISTRIBUTION | | | STATUS | | | | | |
|---|---|---|---|---|---|---|---|---|
| [X] | Field Office | CFO | ‖  OPEN | | ‖  OPEN PENDING PROSECUTION | | [X] | CLOSED |
| [X] | AIGINV | | PREVIOUS REPORT SUBMITTED: | | | ‖  YES | [X] | NO |
| [X] | Component | EOUSA | Date of Previous Report: | | | | | |
| ‖ | USA | | | | | | | |
| [X] | Other | ODAG | | | | | | |

## SYNOPSIS

The Office of the Inspector General (OIG) initiated this investigation upon the receipt of information from the Executive Office for U.S. Attorneys (EOUSA) that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ contacted EOUSA and reported that, for an unknown time period, United States Attorney (USA) ▮▮▮▮▮▮ ▮▮▮▮▮▮ (former) and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ had an extra-marital affair ▮▮▮▮▮ which created an "unbearable atmosphere" in the U.S. Attorney's Office (USAO) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Subsequent to the onset of the investigation, ▮▮▮▮▮▮ provided to the OIG additional information indicating that ▮▮▮▮▮▮ and ▮▮▮▮▮▮ alleged affair caused disparate treatment ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ regarding bonuses and disciplinary actions, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

The OIG investigation substantiated the allegations that ▮▮▮▮▮▮ engaged in an unacknowledged extra-marital affair ▮▮▮▮▮▮ which gave the appearance of partiality and created a difficult work environment for some USAO ▮▮▮▮ employees in violation of 5 CFR 2635.101 and 2635.502, and possibly in violation of regulations and policy against sexual harassment, including 29 CFR § 1604.11 and U.S. Attorney's Manual 3-5.104. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮ retired from federal service ▮▮▮▮▮▮▮▮ shortly after the initiation of the OIG's investigation.

The OIG has completed its investigation and is providing this report to the EOUSA and the Office of the

| DATE | May 1, 2017 | SIGNATURE | |
|---|---|---|---|
| PREPARED BY SPECIAL AGENT | | | |
| DATE | May 1, 2017 | SIGNATURE | *John F. Oleskowicz* (digitally signed) |
| APPROVED BY SPECIAL AGENT IN CHARGE | | John F. Oleskowicz | |

OIG Form III-207/4B (06/22/05) Portions of the Report of Investigation may not be exempt under the Freedom of Information Act (5 USC 552) and the Privacy Act (5 USC 552a).

Deputy Attorney General for information.

# ADDITIONAL SUBJECTS



# DETAILS OF INVESTIGATION

## Predication

The Office of the Inspector General (OIG) initiated this investigation upon the receipt of information from the Executive Office for U.S. Attorneys (EOUSA) that ███████████████████████ ████ contacted EOUSA and reported that, for an unknown time period, United States Attorney (USA) █████ ██████ (former) and ███████████████ had an extra-marital affair █████████ ███████████████████, which created an "unbearable atmosphere" in the U.S. Attorney's Office (USAO) ██████████████████████████ ████████████████████████████████████████

Subsequent to the onset of the investigation, █████████ provided to the OIG additional information indicating that █████████ and █████████ alleged affair caused disparate treatment █████████████████ regarding bonuses and disciplinary actions, ████████████████████████████ ██████████████████████████████████████

## Investigative Process

The OIG's investigative efforts consisted of the following:

Interview of the following USAO ████ employees:

- █████████████████████████
- ███████████████████████████████
- ██████████████████████
- █████████████████████
- ████████████████████████████████████████████
- ██████████████████████████████████
- ████████████████████████
- ██████████████████
- █████████████████████
- █████████████████████
- ██████████████
- ██████████████████ AUSA
- ████████████████ former USA.

Review of the following:
- Appraisals and bonus records for ██████████████████████
- Travel records for █████████ and █████████
- Computer logs for █████████ and █████████
- Training history for █████████ and █████████
- USAO ████ performance statistics

- Official e-mails of ▮▮▮▮ and ▮▮▮▮
- Phone records of ▮▮▮▮ and ▮▮▮▮ USAO-issued cellular phones

## ▮▮▮▮ Intimate Personal Relationship with a Subordinate

The information provided to the OIG alleged that, for an unknown time period, ▮▮▮▮ and ▮▮▮▮ engaged in an extra marital affair ▮▮▮▮ which created an "unbearable atmosphere" in the USAO ▮▮▮▮ Subsequent to the onset of the investigation, the OIG received further information alleging that ▮▮▮▮ and ▮▮▮▮ alleged affair caused disparate of treatment ▮▮▮▮ regarding bonuses and disciplinary actions.

As the U.S. Attorney, ▮▮▮▮ was ▮▮▮▮ supervisor. Accordingly, their respective professional positions undermine the consensual nature of an unacknowledged personal relationship between a supervisor, here the head of the office, and a subordinate. In addition, any such relationship potentially violates the public trust principles outlined in the *Standards of Ethical Conduct* that require supervisors to maintain impartiality in personnel matters involving their subordinates and to take appropriate steps, such as recusal from all matters involving the subordinates, to avoid an appearance of loss of impartiality in the performance of their duties.

*The Standards of Ethical Conduct for Employees of the Executive Branch*, articulated in 5 CFR § 2635.101, "Basic Obligation of Public Service," states in pertinent part the following:

> (a) Public service is a public trust. Each employee has a responsibility to the United States Government and its citizens to place loyalty to the Constitution, laws and ethical principles above private gain. To ensure that every citizen can have complete confidence in the integrity of the Federal Government, each employee shall respect and adhere to the principles of ethical conduct set forth in this section, as well as the implementing standards contained in this part and in supplemental agency regulations.

> (b) General principles. The following general principles apply to every employee and may form the basis for the standards contained in this part. Where a situation is not covered by the standards set forth in this part, employees shall apply the principles set forth in this section in determining whether their conduct is proper.

>> (1) Public service is a public trust, requiring employees to place loyalty to the Constitution, the laws and ethical principles above private gain.
>> …
>> (8) Employees shall act impartially and not give preferential treatment to any private organization or individual.
>> …
>> (14) Employees shall endeavor to avoid any actions creating the appearance that they are violating the law or the ethical standards set forth in this part. Whether particular circumstances create an appearance that the law or these standards have been violated shall be determined from the perspective of a reasonable person with knowledge of the relevant facts.

5 CFR § 2635.502, "Personal and Business Relationships," states in pertinent part the following:

(a) Consideration of appearances by the employee. Where an employee knows that a particular matter involving specific parties is likely to have a direct and predictable effect on the financial interest of a member of his household, or knows that a person with whom he has a covered relationship is or represents a party to such matter, and where the employee determines that the circumstances would cause a reasonable person with knowledge of the relevant facts to question his impartiality in the matter, the employee should not participate in the matter unless he has informed the agency designee of the appearance problem and received authorization from the agency designee in accordance with paragraph (d) of this section.

> (1) In considering whether a relationship would cause a reasonable person to question his impartiality, an employee may seek the assistance of his supervisor, an agency ethics official or the agency designee.
> (2) An employee who is concerned that circumstances other than those specifically described in this section would raise a question regarding his impartiality should use the process described in this section to determine whether he should or should not participate in a particular matter.

29 CFR § 1604.11, "Sexual Harassment," states in pertinent part the following:

> (a) Harassment on the basis of sex is a violation of section 703 of title VII. 1 Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.
> ...
> (b) In determining whether alleged conduct constitutes sexual harassment, the Commission will look at the record as a whole and at the totality of the circumstances, such as the nature of the sexual advances and the context in which the alleged incidents occurred. The determination of the legality of a particular action will be made from the facts, on a case by case basis.
> ...
> (d) With respect to conduct between fellow employees, an employer is responsible for acts of sexual harassment in the workplace where the employer (or its agents or supervisory employees) knows or should have known of the conduct, unless it can show that it took immediate and appropriate corrective action.

The U.S. Attorney's Manual 3-5.103, "Policy Statement on Sexual Harassment," states in pertinent part the following:

> It is the policy of the USAOs and the EOUSA to prohibit sexual harassment in their offices. Sexual harassment is unacceptable conduct in the workplace and will not be condoned. Personnel management within the USAOs and EOUSA shall be free from prohibited personnel practices, as outlined in the provisions of the Civil Service Reform Act of 1978. All employees shall avoid conduct which undermines these principles.



Sexual harassment is a complex and sensitive issue. It is a form of employee misconduct which undermines the integrity of the employment relationship. Harassment on the basis of sex is a violation of Section 703 of Title VII of the Civil Rights Act of 1964, as amended. In accordance with the Equal Employment Opportunity Commission Guidelines on Discrimination Because of Sex, (29 C.F.R. ?.11) [sic], unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when: (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

All employees must be allowed to work in an environment free from unsolicited and unwelcome sexual overtures. Sexual harassment debilitates morale and interferes in the work productivity of its victims and other employees. Therefore, behavior of this nature will not be tolerated.

Multiple USAO███ employees described to the OIG their impression that ███████ and ███████ were engaged in an extra-marital affair. For example, staff told the OIG that ███████ and ███████ frequently carpooled to meetings together alone, had lunch alone together almost every day, and flirted with each other frequently during the day in the office, which was embarrassing and distracting for other employees.   Staff relayed that their affair was obvious and not discrete. ███████████████ During office meetings, ███████ always sat by ███████████. ███████ and ███████ also appeared to frequently go on official travel together so they could spend more time together.

Because of ███████ and ███████ conduct, some employees described the office as a difficult work environment.  Several employees even labeled the ███████ USAO to be a "hostile work environment," due to ███████ and ███████ perceived affair, ███████ harsh management style, ███████ being completely supported by upper management, and having no viable reporting option against ███████ For example, many employees felt they could not report the suspected affair or issues with ███████ to ███████ because they believed that ███████ would not challenge his boss or disrupt the office.  Compounding the described poor atmosphere, several USAO███ staff told the OIG that rumors were being discussed by special agents and members of the federal court regarding a possible romantic relationship between ███████ and ███████ which was embarrassing for USAO███ employees.   Some employees also expressed feeling awkward around ███████████████████ in the same room. ███████████ Many employees felt extremely stressed, powerless, and avoided ███████ and ███████ at any cost.

Several employees also expressed concerns regarding ███████ and ███████ ability to remain impartial regarding office management.  For example, staff mentioned to the OIG that ███████ always supported ███████ which granted her tremendous influence over the office.  Many employees were afraid to approach ███████ regarding ███████ harsh management style because it was assumed they were together, and ███████ would always support her.  Several staff members even feared retaliation for their cooperation with the OIG investigation.

Two witnesses—███████████████████████, and ███████ told the OIG that they voiced concerns to ███████ about his relationship with ███████ ███████ told the OIG that in approximately May 2012, she learned of rumors being discussed in the USAO-███ regarding an alleged affair between ███████ and

████████  ██████ had been friends with ██████ and his family for many years. ██████ approached ██████ in an attempt to warn him of these rumors and the perception of his relationship with ██████. According to ██████

████████████████████████████████████████████████████

██████ said that ever since that conversation, their relationship has been "strained" and had some "tension."

██████ told the OIG that ██████ and ██████ were "very close" and spent a lot of time together, but that he did not suspect an inappropriate relationship. ██████ stated that after ██████ complained to him about the amount of time ██████ and ██████ spent together, ██████ began to be concerned that ██████ and ██████ conduct could raise questions and possibly generate allegations of an inappropriate relationship. ██████ said that he approached ██████ and told him to spend more time with other people in the office in order to avoid such allegations. ██████ said that ██████ acknowledged ██████ warning, but did not change his behavior in the long run.

A review of ██████ and ██████ official e-mail and cell phone records suggested nearly constant communication between them; however, the OIG did not discover any inappropriate or intimate communications.

The OIG reviewed ██████ training history and determined that he had completed training involving sexual harassment, professional conduct, and ethics.

The OIG conducted a review of ██████ appraisals and bonus records. From 2008 through 2014, ██████ received overall outstanding marks on her appraisals. From 2008 through 2015, ██████ received approximately $15,069.88 in cash awards and $17,073 in salary increases. Despite their personal relationship, ██████ was the reviewing official on ██████ appraisals from 2011 through 2014.

████████████████████████████████████████████████████

During his first and second interview with the OIG, ██████ admitted to having an inappropriate relationship with ██████ During the second interview, ██████ said that he had "physical intimacy" with ██████ from approximately November 2011 through November 2015. ██████ agreed that it "was a risk" to his job to engage in the affair, and he knew that EOUSA would have asked for his resignation if they discovered the affair. ██████ also told the OIG that he did not believe ██████ had any knowledge of the affair. ██████ acknowledged that in approximately the summer of 2012, ██████ told ██████ that there were rumors of an affair between him and ██████ ██████ told ██████ "don't worry about it." ██████ did not tell ██████ about the conversation with ██████ ██████ also denied treating ██████ differently after this conversation. ██████ did not recall an instance where ██████ told him he should not spend as much time with ██████ ██████ also admitted to spending time in ██████ hotel room when they traveled together. ██████ contested aspects of the allegations by mentioning the following points:

- ██████ did not believe that he betrayed his employees' trust or demonstrated partiality due to the affair with ██████

- ████████ asserted that his affair did not affect the office adversely or create a hostile work environment.
- ████████ noted a high performance record by the office during his tenure.
- ████████ mentioned that his office was full of lawyers, who mostly were not afraid of confrontation and knew how to report misconduct. ████████ said that employees had "multiple opportunities and avenues in which to address" a hostile work environment to include going to ████ or their immediate supervisor.
- ████████ argued that the timing of the complaint was suspicious and most likely timed to meet agendas of a few "malcontents" in the office.
- ████████ said that ████ received pay increases because she was one of the "hardest working" individuals in the office, not due to any preferential treatment by him.
- ████████ noted that he applied for his retirement prior to having any knowledge of an OIG investigation.
- ████████ did not believe the affair was a misuse of government time, because the high performance records of the office "speak for themselves."
- A review of computer access logs for both ████████ and ████████ from January 2011 through December 2015 determined that they both logged on to their computers in the USAO-██ office on the same day for 26 weekend days. ████████ denied spending time alone with ████ in their offices on weekend days was a misuse of government time. ████████ argued that work was performed on those days, and their actions in the office were not anything "tawdry."

During her first and second interview with the OIG, ████ stated she had a romantic relationship with ████████ In her second interview with the OIG, ████ stated, "If you ask, did the relationship become sexual, yes, it did." ████ characterized her relationship with ████ as consensual.

The OIG investigation concluded that ████████ engaged in the misconduct as alleged and his actions constituted ethical misconduct in violation of *The Standards of Ethical Conduct for Employees of the Executive Branch* articulated in 5 CFR § 2635.101, "Basic Obligation of Public Service," and 5 CFR 2635.502, "Personal and Business Relationships," and a violation of regulations and policy against sexual harassment, including 29 CFR § 1604.11 and U.S. Attorney's Manual 3-5.104. We also found several of ████████ claims to the OIG to be deeply concerning and to evidence a lack of full acceptance of responsibility for his misconduct; for example, his contention that the timing of the complaint against him was suspicious and due to a few office "malcontents" is remarkable given his acknowledgement that discovery of his hidden affair would have caused the Department to seek his resignation.





██████████ admitted to the OIG that when they traveled together, ██████████ spent time in ██████████ hotel room in connection with their intimate relationship.

██████████████████ Nevertheless, the OIG concluded that by engaging in coinciding travel with ██████████ on 16 occasions over a 4+ year period and by carrying on his intimate and inappropriate relationship with ██████████ while on official government travel, ██████████ exercised poor judgment, and further evidenced the OIG's findings, above, in connection with the unacknowledged personal relationship with a subordinate.



The OIG has completed its investigation and is providing this report to the EOUSA and the Office of the Deputy Attorney General for information.