UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
          :
BUZZFEED, INC.,          :
          :
          Plaintiff,      :
          :      17-CV-7949 (VSB)
      - against -      :
          :      **OPINION & ORDER**
          :
U.S. DEPARTMENT OF JUSTICE,          :
          :
          Defendant.  :
          :
------------------------------------------------------------X

Appearances:

Nabiha Syed
Matthew Lynn Schafer
BuzzFeed, Inc.
New York, New York
*Counsel for Plaintiff*

Arastu Kabeer Chaudhury
Assistant United States Attorney
New York, New York
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

       Plaintiff BuzzFeed, Inc. brings this action against Defendant the United States Department of Justice for injunctive relief under the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552, et seq. Before me is Defendant's motion for summary judgment and Plaintiff's cross motion for summary judgment. For the following reasons, Defendant's motion is granted in part and denied in part, and Plaintiff's motion is granted in part and denied in part.

## I. Background and Procedural History[1]

At the center of this case is a report of investigation (the "Report") issued by the United States Department of Justice ("DOJ" or the "Government") Office of Inspector General (the "OIG") concerning a consensual affair between a United States Attorney (the "U.S. Attorney") and a supervisory Assistant United States Attorney (the "Supervisory AUSA" and, together with the U.S. Attorney, the "Officials") employed in a United States Attorney's Office (the "Office"). (Def.'s Mem. 1.)[2] On May 16, 2017, the OIG received a FOIA request from Plaintiff. (*Id.* at 2.) In the request, Plaintiff sought "access to and/or copies of the full report by the Office of the Inspector General related to the Investigative Summary published on OIG's website on May 16, 2017, entitled: 'Findings of Misconduct by a Former United States Attorney for Having an Inappropriate Relationship with a Subordinate.'" (*Id.*) Plaintiff requested the "full report that was provided by OIG to the relevant Justice Department components." (Waller Decl. ¶ 5.)[3]

On June 12, 2017, the OIG responded to Plaintiff's request by providing Plaintiff with a copy of the Report, which was redacted in part pursuant to 5 U.S.C. §§ 552(b)(6) and (b)(7)(C) ("Exemption 6" and "Exemption 7(C)," respectively). (Def.'s Mem. 2.) On March 7, 2018, the Government supplemented that release by producing two additional pages consisting of a list of exhibits to the Report, which were also redacted in part pursuant to the same exemptions. (*Id.*)

The information redacted by the OIG falls into the following categories: (1) the identity and identifying information of the U.S. Attorney; (2) the identity and identifying information of the Supervisory AUSA; (3) the names and identifying information of third parties, including

---

[1] The facts stated in this section are undisputed unless otherwise indicated.

[2] "Def.'s Mem." refers to the Memorandum of Law in Support of the Government's Motion for Summary Judgment, filed on March 21, 2018. (Doc. 16.)

[3] "Waller Decl." refers to the Declaration of Deborah M. Waller, filed in support of Defendant's motion for summary judgment. (Doc. 17.)

2

witnesses referenced in the Report; (4) all informational content, including but not limited to the name and identifying information of an additional subject of the investigation, related to allegations the OIG determined were not supported by evidence and were without merit; and (5) the names of non-supervisory law enforcement agents involved in the OIG investigation. (Waller Decl. ¶ 10.) On June 28, 2017, Plaintiff appealed the OIG's decision to redact the Report. (*See* Compl. ¶ 20, Ex. C.)[4] On September 15, 2017, the DOJ's Office of Information Policy upheld the OIG's redactions. (*Id.* ¶ 22, Ex. E.)

On October 16, 2017, Plaintiff initiated the current action by filing its complaint with this Court. Defendant filed its answer on November 16, 2017. (Doc. 9.) On January 31, 2018, I set a briefing scheduled for the parties' anticipated cross motions for summary judgment. (Doc. 12.) On March 21, 2018, Defendant filed its motion, along with its papers in support. (Docs. 15–17.) On April 20, 2018, Plaintiff filed its opposition and cross motion, along with its papers in support. (Docs. 18–23.) On May 18, 2018, Defendant filed its reply, along with papers in support, (Docs. 24–25), and on June 1, 2018, Plaintiff filed its reply, (Doc. 26).

## II.     **Legal Standards**

### A.     *Summary Judgment*

"Summary judgment is the procedural vehicle by which most FOIA actions are resolved." *N.Y. Times Co. v. U.S. Dep't of Def.*, 499 F. Supp. 2d 501, 509 (S.D.N.Y. 2007) (internal quotation marks omitted). Summary judgment is appropriate when "the parties' submissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002); *see also* Fed. R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine[]' . . . if

---

[4] "Compl." refers to Plaintiff's Complaint, filed on October 16, 2017. (Doc. 1.)

3

the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.*

On a motion for summary judgment, the moving party bears the initial burden of establishing that no genuine factual dispute exists; if satisfied, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial," *id.* at 256, and to present such evidence that would allow a jury to find in its favor, *see Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000). To defeat a summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In considering a summary judgment motion, a court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (internal quotation marks omitted); *see also Matsushita*, 475 U.S. at 587. "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party," summary judgment must be denied. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

### B.   FOIA

"Congress intended FOIA to permit access to official information long shielded unnecessarily from public view." *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011) (internal quotation marks omitted). "FOIA thus mandates that an agency disclose records on request,

4

unless they fall within one of nine exemptions." *Id.* "These exemptions are explicitly made exclusive, and must be narrowly construed." *Id.* (internal quotation marks omitted); *see also U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989) ("Consistent with [FOIA's] goal of broad disclosure, these exemptions have been consistently given a narrow compass.").

For an agency to prevail on a summary judgment motion in a FOIA case, it "must demonstrate that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." *Ruotolo v. Dep't of Justice, Tax Div.*, 53 F.3d 4, 9 (2d Cir. 1995) (internal quotation marks omitted); *see also Garcia v. U.S. Dep't of Justice, Office of Info. & Privacy*, 181 F. Supp. 2d 356, 370 (S.D.N.Y. 2002) (applying the same standard to redactions based on FOIA exemptions). "Summary judgment in favor of the FOIA plaintiff is appropriate when an agency seeks to protect material which, even on the agency's version of the facts, falls outside the proffered exemption," but should be denied if the agency satisfies its burden "to show that requested material falls within a FOIA exemption." *Seife v. U.S. Dep't of State*, 298 F. Supp. 3d 592, 606 (S.D.N.Y. 2018) (internal quotation marks omitted).

"FOIA specifies that a district court must conduct de novo review of an agency's claims to exemptions," *Lee v. FDIC*, 923 F. Supp. 451, 453 (S.D.N.Y. 1996), which are to be "narrowly construed with all doubts resolved in favor of disclosure," *Halpern v. FBI*, 181 F.3d 279, 287 (2d Cir. 1999). "Agency affidavits or declarations may justify summary judgment if they are sufficient to afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." *Seife*, 298 F. Supp. 3d at 606 (internal quotation marks omitted). "Affidavits submitted by an agency are accorded a presumption of good faith." *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994)

(internal quotation marks omitted).

### III. Discussion

The Government moves for summary judgment to uphold the OIG's redactions to the Report. Plaintiff cross moves for summary judgment seeking disclosure of the names and identifying information of the U.S. Attorney and the Supervisory AUSA, along with information concerning allegations of misconduct that the OIG determined were meritless.[5] I address each of these motions.

#### A.   *Applicable Law*

FOIA Exemption 6 exempts from disclosure information from personnel, medical, or other similar files, the disclosure of which "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The purpose of Exemption 6 is to "protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 599 (1982). The statutory language concerning files "similar" to personnel or medical files has been read broadly by the Supreme Court to encompass any "information which applies to a particular individual . . . sought from Government records." *Id.* at 602; *see also Cook v. Nat'l Archives & Records Admin.*, 758 F.3d 168, 174 (2d Cir. 2014).

FOIA Exemption 7(C) exempts from disclosure "records or information compiled for law

---

[5] In its complaint, Plaintiff indicates that it seeks disclosure of all redacted information relating to the substantiated allegations of misconduct, not just the identities of the U.S. Attorney and Supervisory AUSA. (*See, e.g.*, Compl. ¶ 25.) However, Defendant proffers that "[a]ll of the information in the Report about the affair has been disclosed, except for the names and other identifying information" of the U.S. Attorney, Supervisory AUSA, and certain third-party witnesses referenced in the Report. (Def.'s Mem. 1; *see also* Waller Decl. ¶¶ 10, 16.) Moreover, Plaintiff's summary judgment papers focus almost entirely on the disclosure of the Officials' identities, and Plaintiff acknowledges that it does not seek information pertaining to any third-party witnesses, (Pl.'s Mem. 6). Accordingly, I interpret Plaintiff's summary judgment claim seeking disclosure of information related to the substantiated allegations to be limited to a request for the disclosure of the Officials' identifying information. "Pl.'s Mem." refers to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment and in Support of its Cross-Motion for Summary Judgment, filed on April 20, 2018. (Doc. 19.)

6

enforcement purposes" when production of such records or information "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  Exemption 7(C) "is more protective of privacy than Exemption 6, because [Exemption 7(C)] applies to any disclosure that could reasonably be expected to constitute an invasion of privacy that is unwarranted."  *Associated Press v. U.S. Dep't of Justice*, No. 06 Civ. 1758(LAP), 2007 WL 737476, at *4 (S.D.N.Y. Mar. 7, 2007) (internal quotation marks omitted).  As such, where both exemptions are asserted, a court need only evaluate withholding under Exemption 7(C).  *Perlman v. U.S. Dep't of Justice*, 312 F.3d 100, 106 (2d Cir. 2002), *vacated*, 541 U.S. 970 (2004), *reaff'd on remand*, 380 F.3d 110 (2d Cir. 2004) (per curiam).

Under these exemptions, a court must "balance the public interest in disclosure against the [privacy] interest Congress intended the [exemptions] to protect."  *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 776 (1989).  The first step in this process is to identify whether there is any privacy interest in the information sought.  *Fed. Labor Relations Auth. v. U.S. Dep't of Veterans Affairs*, 958 F.2d 503, 509 (1992) ("Only where a privacy interest is implicated does the public interest for which the information will serve become relevant and require a balancing of the competing interests.").  The Supreme Court has explained that such privacy interests include "the individual interest in avoiding disclosure of personal matters" as well as "the interest in independence in making certain kinds of important decisions."  *Reporters Comm.*, 489 U.S. at 762.

It is well established that identifying information such as names, addresses, and other personal information falls within the ambit of privacy concerns under FOIA.  *See Dep't of Air Force v. Rose*, 425 U.S. 352, 380–81 (1976).  "FOIA requires only a measurable interest in privacy to trigger the application of the disclosure balancing tests."  *Fed. Labor Relations Auth.*,

958 F.2d at 510.  Thus, "once a more than de minimis privacy interest is implicated the competing interests at stake must be balanced in order to decide whether disclosure is permitted under FOIA."  *Id.*

With regard to the public interest against which the privacy interest is to be weighed, the Supreme Court has made clear that there is only one relevant interest—"to open agency action to the light of public scrutiny."  *Reporters Comm.*, 489 U.S. at 772 (quoting *Rose*, 425 U.S. at 372).  Whether the public interest in disclosure warrants the invasion of personal privacy is determined by the degree to which disclosure would further the core purpose of FOIA, which focuses on "the citizens' right to be informed about what their government is up to."  *U.S. Dep't of State v. Ray*, 502 U.S. 164, 177 (1991) (quoting *Reporters Comm.*, 489 U.S. at 773).  The Supreme Court has also said that:

> Where the privacy concerns addressed by Exemption 7(C) are present, the exemption requires the person requesting the information to establish a sufficient reason for the disclosure.  First, the citizen must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake.  Second, the citizen must show the information is likely to advance that interest.  Otherwise, the invasion of privacy is unwarranted.

*Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).  Furthermore, if the requester asserts that the reason for the disclosure is to uncover government impropriety or negligence, "the requester must establish more than a bare suspicion in order to obtain disclosure."  *Id.* at 174.  Rather, "the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred."  *Id.*  "The requesting party bears the burden of establishing that disclosure of personal information would serve a public interest cognizable under FOIA."  *Associated Press*, 549 F.3d at 66.

After identifying the relevant public and privacy interests, courts in the Second Circuit consider a series of factors in the balancing of those interests:  (1) the government employee's

rank; (2) the degree of wrongdoing and strength of evidence against the employee; (3) whether there are other ways to obtain the information; (4) whether the information sought sheds light on a government activity; and (5) whether the information sought is related to job function or is of a personal nature.  *Perlman*, 312 F.3d at 107.  None of these factors is dispositive, nor is the list of factors exhaustive.  *Id*.

### B.     *Application*

With these standards in mind, I turn to the specific redactions at issue in this case:  (1) identifying information of the U.S. Attorney and the Supervisory AUSA; and (2) information pertaining to allegations the OIG investigated but determined to be unsubstantiated and without merit.  As a preliminary matter, I need only evaluate withholding under Exemption 7(C), *Perlman*, 312 F.3d at 106, and I note that it is undisputed that the Report was "compiled for law enforcement purposes" so as to fall under Exemption 7(C).  As such, I proceed to the Exemption 7(C) analysis.

#### 1. Disclosure of the Officials' Identifying Information

##### a.   Identification of Public and Private Interests

I first consider the privacy interests of the U.S. Attorney and Supervisory AUSA in the nondisclosure of their names and identifying information.  Their privacy interests need only be more than de minimis to trigger the application of the balancing test used to determine whether disclosure is permitted under FOIA.  *See Fed. Labor Relations Auth.,* 958 F.2d at 510.  The privacy interest protected by Exemption 7(C) is an interest in "avoiding disclosure of personal matters" and "keeping personal facts away from the public eye."  *Reporters Comm*., 489 U.S. at 762.  An individual's privacy interest is particularly pronounced where disclosure could lead to embarrassment or retaliation.  *See Ray*, 502 U.S. at 176–77.

As the Government points out, (Def.'s Mem. 11), the U.S. Attorney and Supervisory AUSA undoubtedly have an interest in keeping the facts of their improper relationship from the public eye and in avoiding disclosure of their identities to prevent embarrassment, *see, e.g.*, *Reporters Comm.*, 489 U.S. at 762 (noting that privacy interests include "the individual interest in avoiding disclosure of personal matters"); *Rose*, 425 U.S. at 380–81 (concluding that identifying information such as names and other personal information falls within the ambit of privacy concerns under FOIA); *cf. Ray*, 502 U.S. at 176–77 (finding that Haitians who had been returned to Haiti under an agreement with the Haitian government that it would not prosecute them for illegally leaving the country had a substantial privacy interest in the nondisclosure of their names). For this reason, I conclude that there is at least a de minimis privacy interest in the nondisclosure of the Officials' identities.

I next consider the public interest in disclosure. It is axiomatic that "[t]he public . . . possesses a strong interest and right to be informed about what their government is up to." *Perlman*, 312 F.3d at 107 (internal quotation marks omitted); *see also Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999) (opining that Congress enacted FOIA "to promote honest and open government and to assure the existence of an informed citizenry to hold the governors accountable to the governed" (internal quotation marks omitted)). Courts have held that under certain circumstances the public possesses a strong interest in the contents of reports prepared by an inspector general. *See Perlman*, 312 F.3d at 108 (concluding that contents of inspector general report revealing how "officials were able to obtain preferential treatment, undue access and exercise improper influence" shed light on government activity). In addition, courts have found redacting the identities of government officials engaged in wrongdoing to be "inappropriate" because "identifying information is crucial to the public's interest in holding

10

such officials accountable." *Cochran v. United States*, 770 F.2d 949, 956 n.9 (11th Cir. 1985); *see also Stern*, 737 F.2d at 92; *Chang v. Dep't of the Navy*, 314 F. Supp. 2d 35, 43 (D.D.C. 2004) (recognizing public's "competing interest . . . in knowing the identities of disciplined government officials").

Here, Plaintiff contends that knowing the identities of the government wrongdoers ensures that the public can hold those individuals accountable for their actions as public servants. Furthermore, without knowing the Officials' identities, Plaintiff contends the public cannot be sure which individuals were bad actors, in which U.S. Attorney's Office they worked, who filled the U.S. Attorney's seat after his resignation, how the Office addressed the reported toxic culture, or if the U.S. Attorney has since served in another government position about which the public would have an interest in knowing. (Pl.'s Reply 2–3.)[6] Thus, I find that there is a significant public interest in revealing the Officials' identifying information.

### b. Balancing of the Competing Interests

Having identified the competing interests implicated in the potential disclosure of the Officials' identifying information, I next balance these interests under the factors set forth in *Perlman*.

#### i. Rank and Level of Responsibility

The first factor—the Government employee's rank—weighs in favor of disclosure. The rank and "level of responsibility held by a federal employee" is an "appropriate consideration" in determining whether the public interest outweighs any privacy interests. *Perlman*, 312 F.3d at 107 (quoting *Stern*, 737 F.2d at 92). The higher ranking the employee the more strongly this

---

[6] "Pl.'s Reply" refers to Plaintiff's Reply Memorandum of Law in Support of its Cross-Motion for Summary Judgment, filed on June 1, 2018. (Doc. 26.)

factor weighs in favor of disclosure. *See, e.g.*, *id.* at 107–09 (concluding that INS general counsel is a "high rank[ing]" employee); *Stern*, 737 F.2d at 93–94 (finding that FBI Special Agent-in-Charge was "high-level"); *Eberg*, 193 F. Supp. 3d at 118 (opining that colonel in the U.S. military is a "high-ranking officer"); *see also Seife v. Nat'l Inst. of Health*, 874 F. Supp. 2d 248, 259 (S.D.N.Y. 2012) (finding employee positions that were not high-ranking to favor disclosure where position was "essential" to agency operation). Furthermore, there is a difference between "political appointee[s] or senior manager[s]" and mere "staff-level career civil servant[s]." *Bartko v. U.S. Dep't of Justice*, 128 F. Supp. 3d 62, 71 (D.D.C. 2015), *rev'd in part on other grounds*, 898 F.3d 51 (D.C. Cir. 2018).

The Government concedes that the U.S. Attorney's "high rank" weighs in favor of release. (*See* Def.'s Mem. 13.) "United States Attorneys serve as the chief federal law enforcement officers in their judicial districts," Justice Manual § 3-1.130 (2018),[7] and are appointed by the President to their posts for four-year terms, subject to removal by the President, 28 U.S.C. § 541. Presented with officials with substantially less power than U.S. Attorneys, the Second Circuit has concluded that positions junior to that of a U.S. Attorney weigh "strongly in favor of disclosure." *See, e.g.*, *Perlman*, 312 F.3d at 107 (finding INS general counsel to be "high rank[ing]"). Therefore, based on the foregoing, I find that the U.S. Attorney constitutes a high-ranking official under the case law in this District.

Similarly, I find that the Supervisory AUSA is sufficiently high-ranking such that this factor weighs in favor of disclosure. The Government does not contest that this factor weighs in favor of disclosure. (*See* Def.'s Mem. 13–14 (noting that Supervisory AUSA's "supervisory

---

[7] "The [Justice Manual] was previously known as the United States Attorneys' Manual (USAM). It was comprehensively revised and renamed in 2018." U.S. Dep't of Justice, Justice Manual, https://www.justice.gov/jm/justice-manual (last visited Mar. 1, 2019).

rank" may weigh in favor of release); *see also* Investigative Summary 1 (characterizing the Supervisory AUSA as "high-level").)[8]  Unlike other AUSAs, Supervisory AUSAs "occupy their positions via temporary promotions" including salary increases.  *See* Justice Manual § 3-4.534 B.2.  In that capacity, Supervisory AUSAs hold managerial roles and have certain oversight responsibilities.  *See id*.; *see also Bartko v. U.S. Dep't of Justice*, 898 F.3d 51, 69 (D.C. Cir. 2018) (noting that supervisory AUSAs' "responsibilit[ies] come[] with an increased public interest" compared to line AUSAs).  Therefore, I conclude that the Supervisory AUSA reasonably falls closer to a "senior manager" in the hierarchical continuum.  *See Stern*, 737 F.2d at 93–94 (distinguishing between line FBI agents and a Special-Agent-in-Charge who constituted a "higher-level official").  Accordingly, the first factor weighs in favor of disclosure.

### ii. Degree of Wrongdoing and Strength of Evidence

The second *Perlman* factor "requires a court to examine the degree of wrongdoing allegedly committed by the employee and the strength of the evidence.  Strong evidence of wrongdoing, combined with a serious offense, would weigh in favor of disclosure."  *Perlman*, 312 F.3d at 107.

As outlined by the OIG, the wrongdoing here "violated Executive branch-wide standards of conduct, federal ethics regulations, and possibly federal regulations and DOJ policy regarding sexual harassment in the workplace."  (Investigative Summary 1.)  Indeed, the Report details the seriousness and consequences of the wrongdoing, noting, among other things, that:

- the affair "created an 'unbearable atmosphere' in the [U.S. Attorney's Office]," (Report 1)[9];

---

[8] "Investigative Summary" refers to the OIG's Investigative Summary of the Report, attached as Exhibit 2 to the Declaration of Zoe Tillman filed in support of Plaintiff's cross-motion for summary judgment.  (Doc. 22.)

[9] "Report" refers to the redacted Report produced by the OIG in response to Plaintiff's FOIA request, attached as Exhibit 3 to the Declaration of Zoe Tillman filed in support of Plaintiff's cross-motion for summary judgment.  (Doc. 22.)

13

- the "affair caused disparate treatment . . . regarding bonuses and disciplinary actions," (*id.*);

- the U.S. Attorney and Supervisory AUSA "flirted with each other frequently during the day in the office, which was embarrassing and distracting for other employees," (*id.* at 7);

- "Several employees even labeled the . . . USAO to be a 'hostile work environment,'" (*id.*);

- "[R]umors were being discussed by special agents and members of the federal court," (*id.*);

- "Many employees felt extremely stressed, powerless and avoided [REDACTED] and [REDACTED] at any cost," (*id.*).

Contrary to the Government's contention, (*see* Def.'s Reply 12–13)[10], the wrongdoing at issue here clearly implicated the core responsibilities of the U.S. Attorney as the chief federal law enforcement officer and head of his judicial district. Among those responsibilities was the supervising, management, and operation of his district. The consequences of the wrongdoing directly impacted the work environment of the Office. Indeed, the actions of the U.S. Attorney and Supervisory AUSA led to the filing of complaints and could have led to lawsuits. The U.S. Attorney himself recognized that "it 'was a risk' to his job to engage in the affair, and he knew EOUSA would have asked for his resignation if they discovered the affair." (*Id.* at 8; *see also Perlman*, 312 F.3d at 107–08 (noting that a showing of wrongdoing may be made by demonstrating that an employee or official "deliberately and knowingly" participated in the act (quoting *Stern*, 737 F.2d at 93–94).)

In an attempt to minimize the seriousness of the misconduct, the Government suggests the conduct was nothing more than an "improper, consensual relationship." (Def.'s Mem. 14.)

---

[10] "Def.'s Reply" refers to the Reply Memorandum of Law in Support of the Government's Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment, filed on May 18, 2018. (Doc. 24.)

As an initial matter, the OIG's own findings contradict this claim since the Report notes that the individuals' "respective professional positions undermine the consensual nature of an unacknowledged personal relationship between a supervisor . . . and a subordinate." (Report 5.) Moreover, the Government's characterization omits consideration of material facts. Here, the improper, consensual relationship was not hidden and unknown to others such that an argument could be made that it only impacted the U.S. Attorney and Supervisory AUSA. Instead, the improper relationship was so open and obvious that it caused employees within the Office to feel powerless, embarrassed, and distracted, and resulted in a work environment that some described as unbearable and hostile. In addition to work environment issues, the conduct had an impact on the operations of the Office since it resulted in disparate treatment regarding bonuses and disciplinary actions, and led some to avoid the U.S. Attorney and Supervisory AUSA at all costs.

The Government also asserts that the Supervisory AUSA's identity should not be disclosed because, other than findings of incomplete financial disclosures, there is no evidence or suggestion in the Report that the Supervisory AUSA engaged in any serious wrongdoing. (Def.'s Reply 16.) However, although the Report focuses on the U.S. Attorney's wrongdoing, the specific allegations relate to the impact of the affair between the Supervisory AUSA and the U.S. Attorney on the Office as a whole. *See supra* (citing excerpts from the Report indicating that numerous employees felt embarrassed, the relationship created a hostile work environment, unbearable atmosphere, and disparate treatment regarding bonuses and disciplinary actions). As such, this factor points at least slightly in favor of disclosure of the Supervisory AUSA's identity.[11]

---

[11] The Government also contends that disclosure of the Officials' names would constitute a de facto disclosure of the names of the third parties who served as witnesses in connection with the Report, resulting in an invasion of privacy with regard to those individuals. (*See* Defs.' Reply 13.) However, beyond this mere conclusory statement, the Government fails to explain how the disclosure of the identities of the U.S. Attorney and Supervisory AUSA would

15

With regard to the strength of the evidence, an inspector general's report of investigation constitutes "a substantial amount of evidence" warranting disclosure. *Perlman*, 312 F.3d at 107. Here, the allegations regarding the improper relationship between the U.S. Attorney and Supervisory AUSA were substantiated by the OIG's investigation. Indeed, the U.S. Attorney resigned at the beginning of the investigation, perhaps because "he knew that EOUSA would have asked for his resignation if they discovered the affair." (Def.'s Reply 8.) Accordingly, both the amount of evidence and the degree of wrongdoing support disclosure.

### iii. Access to Information

Under the third factor, courts consider whether there are other ways for a plaintiff to obtain the requested information. Plaintiff seeks access to information contained in the exclusive control of the OIG. This factor, which the Government does not address, and therefore arguably concedes, *Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of N.J.*, 894 F. Supp. 2d 288, 331 (S.D.N.Y. 2012), weighs in favor of disclosure, *see Perlman*, 312 F.3d at 107–08 (concluding that where government has "exclusive access" to a report of investigation, this factor weighs in favor of disclosure).

### iv. Shedding Light on Government Activity

Next, courts must consider whether the information sought sheds light on a government activity. "This factor examines whether the information sought furthers FOIA's main purpose of opening agency action to the light of public scrutiny. The more the information sought sheds light on what the government is doing, the more this factor favors disclosure." *Perlman*, 312 F.3d at 108 (internal quotation marks omitted). The Second Circuit explained in *Perlman* that

---

result in the exposure of any specific third-party witness out of all of the employees in the Office. As such, the Government's argument is without merit.

16

this factor favors disclosure in the context of reports of investigation like the one at issue here. *See* 312 F.3d at 108 (concluding that contents of inspector general report revealing how "officials were able to obtain preferential treatment, undue access and exercise improper influence" shed light on government activity). The information sought by Plaintiff would shed light on the misconduct of managerial-level government employees, how that misconduct affected their abilities to fulfill their professional responsibilities, and the impact that misconduct had on the operation of the Office. The Report thus sheds light on government activity and this factor weighs in favor of disclosure.

> v. *Relation to Job Function*

Lastly, courts contemplate whether the information sought is related to job function or is personal in nature. Under this factor, the information sought to be disclosed must "relate to the employee's performance of his public duties." *Id.* at 108. Here, the wrongdoing had collateral but direct effects on the employees of the Office and work environment in which they worked with the U.S. Attorney and Supervisory AUSA. As previously articulated, the consequences of the improper relationship affected the day-to-day functioning of the Office as knowledge of the affair was clearly widespread and created, among other things, an "embarrassing" professional atmosphere, disparate treatment regarding bonuses and disciplinary actions, and a "hostile" work environment. *See supra* Part III.B.1.b.ii. Such misconduct can hardly be considered personal conduct unrelated to an official's public duties such that it would prevent disclosure. Rather, the Officials' behavior negatively affected the performance of their public duties and the public duties of certain members of their workplace. Furthermore, to the extent the behavior at issue constituted sexual harassment, *see supra*, courts in the Second Circuit have recognized that "[s]exual harassment by a superior in the workplace is not information of a personal nature, and

17

is most certainly related to that superior's job function," *see, e.g.*, *Eberg*, 193 F. Supp. 3d at 118. This factor thus weighs in favor of disclosure.

Accordingly, all of the factors articulated in *Perlman* weigh, at least to some degree, in favor of disclosure. Having balanced the competing interests at issue, I find that the public interest in disclosure of the identities of the U.S. Attorney and Supervisory AUSA outweighs those individuals' privacy interests.

### 2. Disclosure of Information Pertaining to Unsubstantiated Allegations

The complaint that prompted the OIG's investigation also alleged misconduct by the U.S. Attorney beyond his relationship with the Supervisory AUSA; the complaint involved an additional subject who remains anonymous. (*See* Waller Decl. ¶¶ 10, 20.) After the OIG investigated these additional allegations, it determined that the allegations were without merit. Therefore, when OIG produced the Report to Plaintiff it redacted all discussions pertaining to those allegations it found to be without merit. (*Id.* ¶ 20.) Plaintiff requests disclosure of all information in the Report related to those unsubstantiated allegations. In support of its claim, Plaintiff asserts that the public interest in disclosure outweighs any of the competing privacy interests. I disagree.

The U.S. Attorney and the additional subject have an interest in protecting their reputation from being associated with unsubstantiated allegations of misconduct. *See, e.g.*, *Stern*, 737 F.2d at 92 (finding that disclosure of information about the subjects of an investigation that resulted in no prosecution "may make those persons the subjects of rumor and innuendo, possibly resulting in serious damage to their reputations"); *see also Dunkelberger v. Dep't of Justice*, 906 F.2d 779, 781 (D.C. Cir. 1990) (noting that employee had "a particular interest in not being associated unwarrantedly with the misconduct alleged [and] a more general

18

interest in protecting the privacy of his employment records against public disclosure, whether the information contained in them is favorable or unfavorable").

In terms of the public interest, the unsubstantiated allegations of misconduct, if any, at most consist of an interest in ensuring that the OIG conducted a proper investigation of the additional allegations of misconduct. (*See* Compl., Ex. D (asking whether the OIG has conducted its investigation "even handedly").) However, absent evidence of material impropriety by the OIG, the public interest in second-guessing the OIG's investigation is accorded no weight in the balancing of interests under Exemption 7(C). *See Favish*, 541 U.S. at 175. The Supreme Court has recognized that the "presumption of legitimacy accorded to the Government's official conduct" applies under FOIA. *Id.* at 174. Allegations of impropriety in the course of an investigation are "easy to allege and hard to disprove," and thus "courts must insist on a meaningful evidentiary showing" supporting such allegations before a FOIA requestor can overcome a privacy interest protected by Exemption 7(C). *Id.* at 175 (internal quotation marks omitted). Plaintiff has proffered no such evidence of negligence or impropriety by the OIG in investigating the additional allegations or preparing the Report beyond "bare suspicion."[12] *Favish*, 541 U.S. at 172, 173.

Since Plaintiff has set forth no cognizable, countervailing public interest in this information, I need not conduct a balancing inquiry as to the competing public and private

---

[12] Plaintiff makes reference to the fact that the OIG has "call[ed] into question its own ability to ferret out issues of sexual harassment in the workplace because of DOJ's internal failings in tracking, investigating, and meting out punishment for wrongdoing." (Pl.'s Mem. 8.) Plaintiff relies on its assertions that the OIG has stated that workplace investigations involving sexual misconduct are hard to conduct, that it is difficult to ensure consistent discipline, and that policies of certain other DOJ components undermine those components' abilities to investigate and penalize wrongdoers. (*See* SUMF ¶¶ 23, 25.) But these assertions, even if taken as true, do not call into question the propriety of the OIG's investigation in this case. If anything, the evidence that Plaintiff proffers, which consists of OIG reports identifying issues at DOJ, (*see id.* ¶¶ 21–25), demonstrates that the OIG is cognizant of these issues and concerned with remedying the problems. "SUMF" refers to Plaintiff's Rule 56.1 Statement of Undisputed Material Facts, filed on April 20, 2018. (Doc. 23.)

interests, *id.* at 175, and therefore uphold the OIG's decision to redact information in connection with the unsubstantiated allegations.

### IV. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED IN PART AND DENIED IN PART, and Plaintiff's cross motion for summary judgment is GRANTED IN PART AND DENIED IN PART. The Government is directed to provide Plaintiff with a copy of the Report that contains all identifying information pertaining to the U.S. Attorney and Supervisory AUSA in unredacted form on or before April 12, 2019.

The Clerk of Court is respectfully directed to close the open motions at Dkt. Nos. 15 and 18 and close the case.

SO ORDERED.

Dated: March 11, 2019
      New York, New York

Vernon S. Broderick
United States District Judge