UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BUZZFEED, INC.,

                Plaintiff,

      v.

U.S. DEPARTMENT OF JUSTICE,

              Defendant.

**No. 17 Civ. 7949 (VSB)**

<br>

## MEMORANDUM OF LAW IN SUPPORT OF
## THE GOVERNMENT'S MOTION FOR RECONSIDERATION

<br>

GEOFFREY S. BERMAN
United States Attorney for
Southern District of New York
United States Attorney's Office
86 Chambers Street, Third Floor
New York, New York 10007

<br>

Arastu K. Chaudhury
Assistant United States Attorney
      *Of Counsel*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................1

BACKGROUND .........................................................................................................2

    A.  Plaintiff's FOIA Request ...........................................................................2

    B.  The Court's March 11, 2019, Opinion and Order........................................3

ARGUMENT ..............................................................................................................3

    1.  The degree of wrongdoing and strength of evidence.....................................7

    2.  Access to information ...............................................................................11

    3.  Shedding light on government activity.......................................................11

    4.  Relation to job function ...........................................................................12

CONCLUSION...........................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Immigration Lawyers Assn. v. Executive Office for Immigration Review*,
   830 F.3d 667 (D.C. Cir. 2016) ................................................................................ 11

*Arthur Glick Truck Sales, Inc. v. Stuphen East Corp.*,
   965 F. Supp. 2d 402 (S.D.N.Y. 2013) ...................................................................... 4

*Associated Press v. U.S. Dep't of Defense*,
   554 F.3d 274 (2d Cir. 2009) ............................................................................... 5, 11

*Eberg v. U.S. Dep't of Defense*,
   193 F. Supp. 3d 95 (D. Conn. 2016) ...................................................................... 13

*Forest Service Employees for Environmental Ethics v. U.S. Forest Service*,
   524 F.3d 1021 (9th Cir. 2008) ................................................................................. 5

*Long v. Office of Personnel Management*,
   692 F.3d 185 (2d Cir. 2012) ............................................................................. 11-12

*Nation Magazine v. U.S. Customs Serv.*,
   71 F.3d 885 (D.C. Cir. 1995) .................................................................................. 6

*Nat'l Archives & Records Admin. v. Favish*,
   541 U.S. 157 (2004) ................................................................................................ 4

*Office of the Capital Collateral Counsel v. DOJ*,
   331 F.3d 799 (11th Cir. 2003) ................................................................................. 6

*Perlman v. U.S. Dep't of Justice*,
   312 F.3d 100 (2d Cir. 2002) ........................................................................ 6, 12, 13

*U.S. Dep't of State v. Ray*,
   502 U.S. 164 (1991) ................................................................................................ 5

*Wood v. FBI*,
   432 F.3d 78 (2d Cir. 2005) ...................................................................................... 6

**Rules**

Federal Rule of Civil Procedure 59(e) ............................................................................ 3

Defendant U.S. Department of Justice, by its attorney, Geoffrey S. Berman, U.S. Attorney for the Southern District of New York, hereby requests reconsideration of a portion of the Court's Opinion and Order, dated March 11, 2019, and to alter or amend the Judgment pursuant to Federal Rule of Civil Procedure 59(e) and Local Civil Rule 6.3.[1]

## PRELIMINARY STATEMENT

The Government seeks reconsideration of the Court's March 11, 2019, Order insofar as it requires the Government to release the name of the Supervisory AUSA in addition to that of the former U.S. Attorney.  As an initial matter, the Supervisory AUSA was a subordinate of the former U.S. Attorney, and was not found by the OIG to have engaged in official misconduct. She did not share the U.S. Attorney's responsibilities for the overall management of the U.S. Attorney's Office, and therefore, she should not be held to the same level of public accountability as the former U.S. Attorney for the consequences of his misconduct.  Also, in the context of the OIG Report, the Supervisory AUSA is a witness, and release of her name undermines the significant public interest in encouraging witness participation and candor in investigations.  Moreover, release of a subordinate's name in an investigation finding misconduct by a senior government official could have a chilling effect on victims of sexual harassment or sexual misconduct in future cases coming forward for fear of being subject to unwarranted public embarrassment.

The relevant analysis of the public interest as well as the balancing of factors changes if the U.S. Attorney's name is publicly released.  Assuming, *arguendo*, such a disclosure, further release of the name of the Supervisory AUSA no longer serves the same public interest or

---

[1] Capitalized terms not otherwise defined herein are defined in the Government's memorandum of law in support of summary judgment.  *See* Dkt. 16.

satisfies the same informational goals.  In that context, release of the Supervisory AUSA's name implicates significantly different interests.  When all of the foregoing considerations are taken together, the analysis of the relevant factors weighs in favor of maintaining continued confidentiality of her name in any official release of information.  Thus, the Government respectfully requests that the Court reconsider its analysis of the public interest in having access to the Supervisory AUSA's name.

## BACKGROUND

### A.  Plaintiff's FOIA Request

On May 16, 2017, DOJ's Office of the Inspector General received a FOIA request from Plaintiff.  In the request, Plaintiff sought "access to and/or copies of the full report by the Office of the Inspector General related to the Investigative Summary published on OIG's website on May 16, 2017, entitled:  'Findings of Misconduct by a Former United States Attorney for Having an Inappropriate Relationship with a Subordinate.'"  Dkt. 17 (Waller Decl.) ¶ 5; *see* Compl. Ex. B ("Investigative Summary").  After reviewing the Report and performing the requisite balancing of interests, the OIG released the Report, but redacted five categories of information: (1) the identity and any identifying information of the former U.S Attorney, who is the primary subject of the Report; (2) the identity and identifying information of the Supervisory AUSA with whom the former U.S. Attorney engaged in an undisclosed intimate relationship; (3) the names and identifying information of third parties; (4) all informational content, including but not limited to the name and identifying information of an additional subject of the investigation related to allegations the OIG investigation determined were not supported by evidence and were without merit; and (5) the names of non-supervisory law enforcement agents involved in the OIG investigation.  Dkt. 17 (Waller Decl.) ¶¶ 9-10, 14-18.  On October 16, 2017, Plaintiff initiated the

current action by filing its complaint with this Court, seeking to unredact the information in categories (1), (2), and (4).

**B.  The Court's March 11, 2019, Opinion and Order**

The Government moved for summary judgment on its assertions of FOIA Exemptions (b)(6) and (b)(7)(C).  Dkt. 15.  After briefing, the Court granted the Government's motion in part and denied it in part.  The Court ruled in favor of the Plaintiff with respect to the release of the names of the former U.S. Attorney and Supervisory AUSA.  Dkt. 30 ("Op.") at 20.  The Court based that decision on its balancing of the competing privacy and public interests.  *Id.* at 11.  The Court held that the former U.S. Attorney and the Supervisory AUSA both had privacy interests "in keeping the facts of their improper relationship from the public eye and in avoiding disclosure of their identities to prevent embarrassment."  *Id.* at 10.  The Court also identified as the relevant public interest here "knowing the identities of the government wrongdoers ensures that the public can hold those individuals accountable for their actions as public servants."  *Id.* at 11.  The Court then balanced those interests in the context of five different factors: (i) rank and level of responsibility of the employees, (ii) degree of wrongdoing and strength of the evidence, (iii) access to the information, (iv) shedding light on government activity, and (v) relation to job function, all of which, the Court found weighed in favor of the release of both names.  *Id.* at 11-18.  The Court also assessed whether it was appropriate to release unsubstantiated allegations of misconduct contained in the OIG Report, and determined that such a release was not warranted.  *Id.* at 18-20.

**ARGUMENT**

"Motions for reconsideration are governed by Federal Rule of Civil Procedure 59(e) and Local Civil Rule 6.3, which are meant to ensure the finality of decisions and to prevent the

practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." *Arthur Glick Truck Sales, Inc. v. Stuphen East Corp.*, 965 F. Supp. 2d 402, 404 (S.D.N.Y. 2013) (internal quotation marks omitted).  "[T]o be entitled to reconsideration, a movant must demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion, which, had they been considered might reasonably have altered the result reached by the court." *Arthur Glick*, 965 F. Supp. 2d at 405 (internal quotation marks omitted). Reconsideration is appropriate only where there is (i) an intervening change of controlling law, (ii) newly available evidence, or (iii) a need to correct a clear error or prevent manifest injustice. *Id.*  In this case, the Government respectfully submits that reconsideration be given to the release of the subordinate official's identity, to prevent the manifest injustice in what would be an unwarranted invasion of her privacy.

When privacy concerns implicated by Exemption 7(C) are present, the requester must establish a sufficient reason for disclosure.  *See* Op. at 8 (quoting *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004)).  That is, Plaintiff must show that the interest to be advanced is a significant one, "an interest more specific than having the information for its own sake," and that the specific information sought is "likely to advance that interest."  *Id.*  If the requester cannot meet this burden, then the invasion of privacy is unwarranted.

If the former U.S. Attorney's name is released, many of the public interests that the Plaintiff has identified will be satisfied by the revelation of the former U.S. Attorney's name.   In this scenario, the subordinate's name should only be released if it is likely to advance some significant public interest, "more specific than having the information for its own sake," that will not already be served by revelation of the former U.S. Attorney's name.

4

The Court explained, according to the Plaintiff, knowing both identities would "ensure[] that the public can hold those individuals accountable for their actions as public servants," and that, without knowing their names, "the public cannot be sure which individuals were bad actors, in which U.S. Attorney's Office they worked, who filled the U.S. Attorney's seat after his resignation, how the Office addressed the reported toxic culture, or if the U.S. Attorney has since served in another government position about which the public would have an interest in knowing."  Op. at 11.  Once the former U.S. Attorney's name is released, however, the bad actor is identified, the specific U.S. Attorney's Office is identified, the successor U.S. Attorney will be identified, how the Office addressed the issue can be determined, and the future of the former U.S. Attorney that was the subject of the Report will be known.

Since those public interests are satisfied by the disclosure of the former U.S. Attorney's name, and the substantiated conduct has already been released in the redacted version of the Report, release of the Supervisory AUSA's name should turn on how "the addition of the redacted identifying information would shed any additional light on the Government's conduct." *Associated Press v. U.S. Dep't of Defense*, 554 F.3d 274, 288 (2d Cir. 2009) (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 178 (1991)) (internal quotation marks omitted)*; see also Am. Immigration Lawyers Assn. v. Executive Office for Immigration Review*, 830 F.3d 667, 674 (D.C. Cir. 2016) (observing that the question is not whether disclosing identities would "serve the public interest in disclosure in the abstract," but in light of the information already disclosed by the agency, whether "the 'incremental value' served by disclosing [a person's name] outweighs that person's privacy interest."); *Forest Service Employees for Environmental Ethics v. U.S. Forest Service*, 524 F.3d 1021, 1027 (9th Cir. 2008) (concluding that the identities of federal

5

employees should not be disclosed unless the "marginal additional usefulness" of such information is sufficient to overcome the privacy interests).

The balancing of privacy interests against the public interest must be done on an individual basis: one set of privacy interests and applicable public interests cannot supplant another.  *See Wood v. FBI*, 432 F.3d 78, 86 (2d Cir. 2005); *Office of the Capital Collateral Counsel v. DOJ*, 331 F.3d 799, 804 (11th Cir. 2003); *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 894 (D.C. Cir. 1995).  Here, any balancing of relevant interests should also include the public interest in encouraging witness cooperation with investigations, *see Perlman v. U.S. Dep't of Justice*, 312 F.3d 100, 106 (2d Cir. 2002) (holding that "the strong public interest in encouraging witnesses to participate in future government investigations offsets the weak public interest in learning witness and third party identities"), an institutional consideration that is particularly acute in investigations involving allegations of sexual misconduct and harassment.

Releasing the Supervisory AUSA's name in addition to the U.S. Attorney's, would not further any of the informational goals or the public interests the Court has identified.  *See* Op. at 11.  While the Supervisory AUSA was a participant in the improper relationship, in the context of the OIG Report, she was also a witness and a subordinate.  Dkt. 17 (Waller Decl.) Ex. 2 ("Report") at 9, 11.  The Supervisory AUSA was candid in her interviews about the nature and specifics of her relationship with the U.S. Attorney.  *Id.*  Release of her name would undermine the public interest in encouraging witness participation and candor in OIG investigations.  Indeed, release of the subordinate's name here could deter other subordinate employees who had intimate relationships with their supervisors from coming forward to report inappropriate supervisor-subordinate relationships because of fear that their names could become public, even though they had not engaged in any misconduct.  These public interests should be considered in

6

the balancing of interests.  When the relevant interests in the Supervisory AUSA's identity are considered separately from and after the release of the former U.S. Attorney's name, the analysis of four of the five factors, which the Court considered, fundamentally changes.[2]

### 1.  The degree of wrongdoing and strength of evidence

Considering the Supervisory AUSA's interests alone, and in the context of the release of the U.S. Attorney's name, the degree of wrongdoing and strength of evidence factor weighs in favor of continued confidentiality of her name.  The former U.S. Attorney was the subject of the OIG Report and the OIG concluded that he had committed official misconduct by engaging in the relationship.  The OIG makes no such finding with respect to the Supervisory AUSA.  The Court found that "the wrongdoing here 'violated Executive branch-wide standards of conduct, federal ethics regulations, and possibly federal regulations and DOJ policy regarding sexual harassment in the workplace.'"  Op. at 13 (quoting Investigative Summary 1).  Also, the Court noted that the U.S. Attorney "recognized 'it was a risk to his job to engage in the affair, and he knew EOUSA would have asked for his resignation if they discovered the affair,'" thereby, acknowledging a consciousness of wrongdoing.  Op. at 14 (quoting Report at 8 (embedded quotation marks omitted)).  The OIG makes clear in its Investigative Summary and Report that the "wrongdoing" from the relationship was the U.S. Attorney's conduct alone.[3]

---

[2] The one factor that does not fundamentally change is the rank of the government official.  As the Court noted, the Supervisory AUSA is of higher rank than a line AUSA, Op. at 12-13, but the Supervisory AUSA by no means is of similar rank to the U.S Attorney, who is a Presidential appointee.  Thus, while there may be a greater public interest in knowing about the activities of the Supervisory AUSA than in that of the activities of a line AUSA, such interest is not as great as the interest in the former U.S. Attorney's activities, and not as great as if the Supervisory AUSA were herself found to have engaged in misconduct.

[3] "The OIG found that *the USA's misconduct* gave the appearance of partiality, created a difficult work environment, and violated Executive branch-wide standards of conduct, federal ethics

But the Court's analysis focused on the Report's findings vis-à-vis the U.S. Attorney, but applied them to the Supervisory AUSA.  *See, e.g.*, Op. at 11-15.  In light of her position as a subordinate of the former U.S. Attorney, she could not violate the DOJ policy regarding sexual harassment in the workplace, by virtue of their relationship.  Rather, she could have potentially claimed that she was a victim of sexual harassment, and conceivably, could still do so.  Indeed, the Court took issue with the Government's description of the relationship as an "improper consensual relationship" because the former U.S. Attorney's and Supervisory AUSA's "respective professional positions undermine the consensual nature of an unacknowledged personal relationship between a supervisor . . . and a subordinate."  Op. at 13-14 (quoting Report at 5 (internal quotation marks omitted)).[4]

Recent DOJ guidance on romantic or intimate relationships, issued long after the conduct described in the Report, makes clear that in a relationship between a supervisor and a subordinate, the supervisor "ordinarily will be accountable for ensuring that the relationship does not lead to the potential concerns . . . [including] that the relationship causes no other disruption to the workplace," and requires that the supervisor notify his next-line supervisor, who will take measures, "to ensure that the relationship does not result in any adverse impact on the Department's operations or on other employees in the workplace."  Decl. of Arastu K.

---

regulations, and possibly federal regulations and DOJ policy regarding sexual harassment in the workplace." Investigative Summary 1 (emphasis added).

[4] The Supervisory AUSA has consistently characterized her relationship with the U.S. Attorney as "consensual" and has never described herself as a victim.  Report at 9.  Accordingly, we refer to the Supervisory AUSA as a witness.  Nonetheless, as the Court recognized in quoting the above passage from the OIG's Report, the respective positions of authority undermine the consensual nature of an undisclosed supervisor-subordinate relationship.

Chaudhury, Ex. A at 6.[5]  The subordinate, on the other hand, is obliged only to notify a supervisor or EOUSA about the relationship.  *Id.*  Although the recent DOJ guidance was not in effect at the time, had it been, the Supervisory AUSA would have been required to disclose the relationship at the outset, and her failure to report it would have been the sum total of any potential "wrongdoing" by her arising from the relationship.

The Court based its decision to release the Supervisory AUSA's name, in part, because of "the impact of the affair . . . on the Office as a whole," finding that this impact "points at least slightly in favor of disclosure of the Supervisory AUSA's identity."  Op. at 15.  The Court was particularly concerned about the impact on office operations because the relationship between the former U.S. Attorney and the Supervisory AUSA "resulted in disparate treatment regarding bonuses and disciplinary actions."  Op. at 15.  But the information about disparate treatment regarding bonuses and disciplinary allegations were *allegations* made to the OIG, not findings. *See* Report at 5 ("Subsequent to the onset of the investigation, the OIG received further information *alleging* that [REDACTED] and [REDACTED] alleged affair caused disparate treatment [REDACTED] regarding bonuses and disciplinary actions." (emphasis added)).  The OIG made no findings of disparate treatment regarding bonuses and disciplinary actions.  *See* Report at 11.  While the OIG Report does describe a "poor atmosphere" in the office, and that some employees felt the relationship left them without a "viable reporting option" against the

---

[5] Special responsibilities apply when a U.S. Attorney is in a romantic or intimate relationship with a subordinate employee, because "the operations of the entire office will almost certainly be affected," and the potential for "complaints of favoritism, conflicts of interest, loss of objectivity, abuse of authority, or sexual harassment against the [U.S. Attorney] increases greatly." Chaudhury Decl. Ex. A at 7.  Because of the impracticality of having the U.S. Attorney recuse himself from official matters that may affect the subordinate, and because of the "severe impact" such a relationship has on the office, the DOJ guidance makes clear that the U.S. Attorney who engages in a relationship with a subordinate may be subject to discipline.  *Id.* at 7-8.

Supervisory AUSA's "harsh management style," *id.* at 7, the former U.S. Attorney, not the Supervisory AUSA, is responsible for the Office operations, and therefore he alone is accountable for that consequence of his misconduct in engaging in the relationship with his subordinate. If the former U.S. Attorney's name is released, the identity of the primary actor, against whom there was a finding of misconduct, will be revealed.

The Court has recognized that the Supervisory AUSA has a measurable privacy interest in avoiding the embarrassment that would ensue from the disclosure of her name.  Op. at 10. The Court has also noted that Supreme Court precedent characterizes an individual's privacy interest as "particularly pronounced" when disclosure could lead to embarrassment or retaliation. *Id.* at 9.  While the Supervisory AUSA's conduct in failing to report the relationship and contributing to a "poor atmosphere" may be bad management, Report at 7, it was not official misconduct and should not be sufficient to tip the balance towards disclosure of the Supervisory AUSA's name.  This is especially so when release of the Supervisory AUSA's name will result in directly revealing the name of a witness.  Indeed, part of the reason there is a substantial amount of evidence of the personal relationship is due to the Supervisory AUSA's candor with her interviewers throughout the process.  *Id.* at 9.  The public interest in witness candor is undermined by the release of her name, particularly where allegations of sexual harassment or misconduct are at issue.  Court-ordered public naming of a subordinate in a supervisor/subordinate relationship could well have a chilling effect on the reporting of such conduct in future and on the participation of witnesses to such conduct in related investigations. After the release of the former U.S. Attorney's name, and in light of the absence of any official misconduct findings against the subordinate and her participation as a witness in the OIG

investigation, the balance with respect to the degree of wrongdoing and strength of evidence factor shifts in favor of continued confidentiality.

### 2. Access to information

If the former U.S. Attorney's name is released, the access to information factor shifts to favoring nondisclosure of the Supervisory AUSA's name.  Revealing the former U.S. Attorney's name will result in identifying the relevant U.S. Attorney's Office at issue.  With that information in hand, the identity of the Supervisory AUSA is no longer "in the exclusive control of the OIG."  Op. at 16.  Thus, this factor no longer weighs in favor of disclosure of the Supervisory AUSA's identity if the former U.S. Attorney's name is released.

### 3. Shedding light on government activity

The Court held that the "information sought by Plaintiff would shed light on the misconduct of managerial-level government employees, how that misconduct affected their abilities to fulfill their professional responsibilities, and the impact that misconduct had on the operation of the Office."  Op. at 17.  But the released Report already catalogues how the misconduct affected the officials' professional responsibilities and impacted the Office, and, indeed, the Court relied on the substantial details of the misconduct and its effects on the office in its analysis of the wrongdoing.  *See* Op. at 13-15.  Once the former U.S. Attorney's name is released, a substantive detail about the government activity will come to light: the primary actor will be revealed.  No specific, additional, "incremental value" is realized by disclosing the Supervisory AUSA's name.  *American Immigration Lawyers Assn.*, 830 F.3d at 674; *Associated Press*, 554 F.3d at 292.  In assessing how disclosure of names serves the purposes of FOIA, the focus "must be solely upon what the requested information *reveals*, not upon what it might lead to."  *Associated Press*, 554 F.3d at 288; *Long v. Office of Personnel Management*, 692 F.3d 185,

11

194 (2d Cir. 2012) (explaining that while an employee's name may be useful for investigating the behavior of individual employees, "courts have been skeptical of recognizing a public interest in this 'derivative' use of information, which is indirect and speculative," and which "actually facilitates the invasion of the employee's personal privacy.").  While the disclosure of the Supervisory AUSA's name in this Report will serve to embarrass and humiliate her, such disclosure does not meaningfully serve the informational goals identified by the Court, Op. at 11, and does not meaningfully shed any additional light on the wrongdoing or its effects, *i.e.*, the government activity in question.  Accordingly, the Supervisory AUSA's privacy interest in avoiding the embarrassment and humiliation of the disclosure of her name must prevail in the balancing here.

### 4.  Relation to job function

As the Court notes, "[u]nder this factor, the information sought to be disclosed must 'relate to the employee's performance of his public duties.'" Op. at 17 (quoting *Perlman*, 312 F.3d at 108).  The information at issue is not the "wrongdoing" nor is it the "the consequences of the improper relationship"—that information has been released in the OIG Report.  *Id.*  The "information" at issue is the names of the individuals.  In analyzing this factor, the Court focused on the consequences of the relationship on the Office, in particular "an 'embarrassing' professional atmosphere, disparate treatment regarding bonuses and disciplinary actions,[6] and a 'hostile' work environment."  Op. at 17.  The Court also noted that "to the extent the behavior at issue constituted sexual harassment . . . '[s]exual harassment by a superior in the workplace is not information of a personal nature, and is most certainly related to that superior's job function."

---

[6] As discussed above, the OIG did not make findings of disparate treatment regarding bonuses and disciplinary actions.  *See supra* at 9-10.

*Id.* at 17-18 (quoting *Eberg v. U.S. Dep't of Defense*, 193 F. Supp. 3d 95, 118 (D. Conn. 2016)). However, these considerations do not directly relate to the Supervisory AUSA.  The effects of the relationship on the Office's operation is an issue for the former U.S. Attorney, as the primary person responsible for the Office as a whole, and the considerations of sexual harassment identified by the Court expressly exclude the Supervisory AUSA because she was the subordinate not the "superior."  *Id.*  Moreover, in the context of the OIG Report, the Supervisory AUSA is a witness, whose candid statements to interviewers played a significant role in establishing the wrongdoing of the former U.S. Attorney.  *See* Report at 9.  To release her name, in addition to the former U.S. Attorney's name, thus, does not relate to her job function as a Supervisory AUSA, but to her role as a witness.  Such a release would undermine the significant public interest in witness cooperation and candor.  *See Perlman*, 312 F.3d at 106.  Thus, this factor weighs in favor of continued confidentiality.

## CONCLUSION

Based on the foregoing, the Court should reconsider its Opinion and Order, and grant summary judgment to the Government insofar as it seeks to withhold the name of the Supervisory AUSA.

Dated:  New York, New York
      April 8, 2019

                              GEOFFREY S. BERMAN
                              United States Attorney
                              Southern District of New York

By:      /s/ *Arastu K. Chaudhury*
              ARASTU K. CHAUDHURY
              Assistant United States Attorney
              86 Chambers Street, Third Floor
              New York, New York 10007
              Telephone:  (212) 637-2633
              Facsimile:  (212) 637-2717
              E-mail:  arastu.chaudhury@usdoj.gov